## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT DICKSON, | : | |
| | : | Civil Action No. 05-cv-1444(JHR) |
| Plaintiff, | : | |
| | : | **OPINION** |
| THE COUNTY OF GLOUCESTER | : | |
| NEW JERSEY | : | |
| | : | |
| Defendants. | : | |

**Appearances:**

> John J. Finnegan III, Esquire
> 20 Sharon Avenue
> Mays Landing, NJ 08330
> Attorney for Plaintiff

> William C. O'Brien Jr., Esquire
> 6 Kings Highway East
> Haddonfield, NJ 08033
> Attorney for Plaintiff

> Michael Paul Madden, Esquire
> Madden, Madden, & Del Duca, PC
> 108 Kings Highway East, Suite 200
> PO Box 210
> Haddonfield, NJ 08033
> Attorney for Defendant

**RODRIGUEZ, Senior District Judge.**

This matter comes before the Court on Defendant's Motion for Summary Judgment [16] pursuant to Fed. R. Civ. P. 56. Oral argument on the motion was heard November 21, 2006, and the record of that date is incorporated here. For the reasons stated below, as well as those given during the discussion of November 21, 2006, the motion will be granted.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 27, 2003 at 8:30 a.m., while incarcerated in Gloucester County Jail ("GCJ"), plaintiff  Robert Dickson was assaulted by Sha-Ron Jennings ("Jennings"), a fellow prisoner.  The assault caused plaintiff severe and permanent physical and psychological injuries.  (Pl. Compl. at ¶ 4.)

The altercation between the plaintiff and Jennings arose out of a dispute over tier sanitation.  (Def. Statement of Undisputed Facts at ¶ 41.)  The plaintiff and Jennings had entered into an agreement regarding a tier sanitation assignment.  (Def. Facts at ¶ 47.) Officer Raymond Smith ("Smith"), a correctional officer on duty, told the plaintiff that his tier sanitation assignment was not being performed in an acceptable manner and he risked losing his assignment.  (Def. Facts at ¶53.)  In the presence of Smith, the plaintiff informed Jennings that their previous agreement regarding the tier sanitation assignment would no longer be honored.  (Pl. Opp. at ¶ 20-21.)  Jennings did not respond.  Approximately ten seconds elapsed, and then Jennings assaulted the plaintiff. (Def. Facts at ¶ 56.)  The assault occurred in the presence of Smith.  In order to strike the plaintiff, Jennings had to lunge past Smith.  The blow knocked the plaintiff unconscious.  (Pl. Opp. at ¶ 24.)  The plaintiff alleges that the correctional officer failed to intervene or prevent the assault.  (Pl. Opp. at ¶ 35.)

After the assault, Jennings ran back to his cell and Smith notified other correctional officers of the incident.  Smith then secured the area of the assault and moved the plaintiff out of his cell.  At that point, plaintiff complained of his injuries and requested to see a nurse.  (Def. Facts at ¶ 57-60.)  Within 15 minutes of the incident, Smith took the plaintiff to see a nurse.  (Pl. Opp. at ¶ 38.)  The plaintiff complained of

2

extreme pain.  The nurse gave the plaintiff a gauze for his bloody nose and told him to get rest.  He received no medication or ice for the pain.  (Pl. Opp. at ¶ 26.)  After resting, the plaintiff was still in extreme pain and noticed that his cheek bone was significantly distorted.  (Pl.  Facts at ¶39.)

During the lunch hour, the plaintiff complained to corrections officers about the pain he was suffering and requested to go to a hospital.  The officers ignored the plaintiff's requests.  Over the next day and one-half, the plaintiff made approximately 15 requests to correctional officers for ice and medicine for the pain and medical attention. (Pl. Opp. at ¶ 44.)  The officers ignored his requests and responded with derogatory remarks.  (Pl. Opp. at ¶ 44.)

On January 28, 2003 at approximately 5:45 p.m., one of the officers responded to the plaintiff's request for medical attention and took him to see the medical staff in the jail.  At approximately 7:00 p.m., the plaintiff was taken to the emergency room at Underwood Memorial Hospital.  A CT scan disclosed that the plaintiff had suffered a concussion, a crushed sinus, and a fractured orbital socket.  (Pl. Opp. at ¶ 45-46.)  The plaintiff was released from the hospital on January 28, 2003 and instructed to see a specialist on facial reconstruction within 48 hours.  (Pl. Opp. at ¶ 46-47.)  The plaintiff was released from Gloucester County Jail on January 29, 2003.  (Pl. Opp. at ¶ 46-47.)

On February 2, 2003, the plaintiff saw Dr. Patrick Hall who concluded that the plaintiff suffered a malar complex fracture as a result of the assault.  The plaintiff underwent surgery on February 2, 2003 to correct the fracture.  Two plates and 14 screws were placed in the plaintiff's face.  Plaintiff asserts, according to the doctor's diagnosis, that the delay of 36 hours from receiving medical attention  caused a

3

severance of a nerve in the cheekbone area, which resulted in permanent numbness on the left side of his face.  (Pl. Opp. at ¶ 48-49.)

The policy of GCJ for emergency situations is as follows: "To provide emergency first aid, and the fast and secure evacuation of the injured party if necessary; to insure preservation of the crime scene and through investigation of the incident whether accidental or deliberate; to notify the next of kin as soon as possible." (GCJ General Order Ch. 72 section 35, Def. Exh. G.)  Sheriff Gilbert Miller testified in his deposition that according to County protocol, if an inmate continually complained about his injuries after an initial examination by the medical staff, the inmate would be allowed to see the medical staff again.  (Def. Facts at ¶ 78.)

 The plaintiff alleges that Gloucester County through its employees failed to prevent the assault and failed to provide medical attention for approximately 36 hours, thereby exacerbating his injuries.  He further asserts GCJ lacked a policy to specifically address his serious medical need, which led to the 36-hour delay in medical treatment. The plaintiff filed a complaint on January 27, 2005 in the Superior Court of New Jersey, Law Division, Gloucester County, alleging violations of the Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States.  This case was removed from Gloucester County Superior Court on March 14, 2005 to the United States District Court for the District of New Jersey.  An Order denying plaintiff's Motion to Amend/Correct Complaint was handed down by the Honorable Ann Marie Donio on September 20, 2005.

Defendant Gloucester County moves for summary judgment, arguing that the plaintiff failed to point to a policy that caused the plaintiff's injury and that the existing policy through its application adequately provides for the safety of the inmates.

## DISCUSSION

### A.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and

affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477

U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general

denials or . . . vague statements . . . .'" <u>Trap Rock Indus., Inc. v. Local 825, Int'l Union of</u>

<u>Operating Eng'rs</u>, 982 F.2d 884, 890 (3d Cir. 1992) (quoting <u>Quiroga v. Hasbro, Inc.</u>,

934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.

<u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the Court's role

is not to evaluate the evidence and decide the truth of the matter, but to determine

whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility

determinations are the province of the fact finder.  <u>Big Apple BMW, Inc. v. BMW of N.</u>

<u>Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. 42 U.S.C. §1983**

Title 42 U.S.C. § 1983 provides a civil remedy against any person who, under

color of state law, deprives another of rights protected by the United States Constitution.

<u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992).  Section 1983 does not

itself confer any substantive rights; it merely serves as a vehicle to enforce rights granted

through the Constitution or through federal law.  <u>Baker v. McCollan</u>, 443 U.S. 137, 144

n.3 (1979).  To state a claim under § 1983, a plaintiff must establish two essential

elements: (1) the violation of a right secured by the Constitution or laws of the United

States; and (2) that the alleged deprivation was committed by a person acting under the

6

color of state law.[1]  West v. Atkins, 487 U.S. 42, 48 (1988).

## C.  Plaintiff's claim against Gloucester County

The plaintiff argues that employees of GCJ failed to prevent the assault on his person and therefore did not abide by GCJ's polices and procedures.  In addition, he contends the 36-hour delay of medical treatment was caused by GCJ's lack of a policy to address the serious medical needs of inmates.   For these reasons, the plaintiff asserts that Gloucester County was deliberately indifferent to his serious medical need which amounted to violations of the Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States.

A §1983 plaintiff may hold a municipality liable for the deprivation of federal rights if the plaintiff provides evidence that the policy or custom caused the constitutional violation the plaintiff alleges.  Natale v. Camden Co. Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003).  The municipal policymaker must have the requisite degree of culpability and there must exist a direct casual link between the policy or custom and the deprivation of federal rights.  Board of Bryan County v. Brown, 520 U.S. 397, 404 (1997).  Direct causal link has been interpreted as a proximate cause requirement.  Kneipp by Cusack v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).  A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy

---

[1]  The statute provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2000).

with respect to the action issues a final proclamation, policy or edict." <u>Natale</u>, 318 F.3d at 584 (quoting <u>Pembaur v. City of Cincinnatti</u>, 475 U.S. 469, 481 (1986)).  A custom is an act that is so widespread as to have the force of law, but has not been formally approved by an appropriate decision maker.  <u>Natale</u>, 318 U.S. at 584.

A municipality cannot be held vicariously liable for the actions of its employees. <u>Monell v. Dep't of Soc. Servs</u>., 436 U.S. 658, 691 (1978).  However, three situations exist where the court may hold that the acts of a government employee was the result of a policy or custom: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; (3) and where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>Natale</u>, 318 F.3d at 584 (quoting <u>Bryan County</u>, 520 U.S. at 417-418 (Souter, J., dissenting)).

The plaintiff's claim of injury does not meet the first two situations described in <u>Monell</u>.  The plaintiff has failed to point to a policy that has deprived him of a federal right.  He admits that GCJ has a policy to address emergency situations.  Also, the plaintiff provides no evidence that the policymaker of GCJ has acted in violation of federal law.  The Court turns to plaintiff's claim under the third situation described in <u>Natale</u>, which holds a county liable when a policymaker fails to act to control its employees.

8

The plaintiff asserts that Correctional Officer Smith failed to prevent prisoner Jennings from assaulting him.  However assuming, for the sake of summary judgment, that Smith was deliberately indifferent to a serious medical need, Gloucester County will not be held vicariously liable for the actions of its employees.  Instead the plaintiff must show that a GCJ policy caused his injury; the plaintiff failed to show this.

It seems unlikely that any policy could have prevented the assault of the plaintiff. In fact, GCJ has a policy that addresses how correctional officers should react to an emergency situation.  (GCJ General Order Ch. 72 section 35, Def. exhibit G.)  The plaintiff agrees that only ten seconds elapsed between the initial communication and the assault by prisoner Jennings on the plaintiff.  (Def. Facts at ¶ 56.)  Although it may be likely that a prisoner would assault another prisoner, no policy could have prevented a virtually unprovoked assault where there was no history of animosity or altercations between prisoner Jennings and the plaintiff.  Gloucester County should not be liable for failing to prevent an unprovoked assault on the plaintiff because there is no causal link between the assault and a policy, custom, or lack of policy.

The plaintiff also asserts that Gloucester County lacked a policy to address his serious medical need and that the need for such a policy was so obvious that it amounted to deliberate indifference on the part of the policymaker.  There is no history of employees of GCJ failing to follow-up on inmates who had been involved in an emergency situation and had previously been examined by a nurse.  There is also no evidence of GCJ employees being deliberate indifferent to the serious medical needs of inmates.  Without any history of misconduct it is unlikely that the policy maker of GCJ

9

will deem the existing policies and practices of Gloucester County to be inadequate to address the serious medical needs of its inmates.

In addition, it is not obvious that the existing policies of GCJ would have been insufficient to address the serious medical needs of prisoners.  The General Order chapter 72 section 35 directly addresses emergency situations and how officers should account for the medical needs of the prisoner.  Although the policy does not mandate that the officers follow-up on the well being of the prisoner, the jail protocol requires officers to address the medical needs of prisoners.  (Def. Facts at ¶ 78.)  The plaintiff fails to provide any evidence to rebut the existence of this protocol.  Since both a policy and a protocol exist addressing how GCJ employees should attend to the serious medical needs of inmates, the plaintiff must provide evidence that the employees customarily ignored both the policy and the protocol and that the policymaker knew of this custom.  There is no such evidence in the record.  Therefore the lack of a more specific policy was not the proximate cause of the plaintiff's injury.  At most, the plaintiff points to a lack of a jail protocol that would require correctional officers to let inmates see the medical staff upon request.  Viewed in a light most favorable to Plaintiff, however, his claims fall far short of establishing a Constitutional deprivation sufficient to survive summary judgment.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted.   An appropriate Order will issue this date.


                                              _____/s/ Joseph H. Rodriguez_____

Dated: March 27, 2007                         Joseph H. Rodriguez, U.S.D.J.